I «SUSAN M. CHEHARDY, Judge.
In this personal injury lawsuit, the insurance company appeals the trial court judgment in favor of the plaintiffs. For the following reasons, we affirm the trial court’s ruling.

Facts

On the evening of March 3, 2000, Peter Delaune and his girlfriend, Jennifer Thompson, took two of her children to a Mardi Gras parade in Metairie, Louisiana. In order to avoid the post-parade traffic, the group left a few minutes before the end of the parade. Jennifer was driving Peter’s 1987 Honda Accord, with Peter in the front passenger seat and the children in the backseat. While they were stopped on Elmeer Street waiting to turn onto West Esplanade Avenue, their vehicle was rear-ended by a late-model dark-colored Chevrolet Camaro registered to Patricia Harrelson. Both Patricia Harrelson and Bruce Melancon were occupants of the Camaro that night.
Fortunately, neither of Jennifer Thompson’s children, who were passengers in the car that night, were injured in the accident. Jennifer, however, was taken that night by ambulance to the emergency room at East Jefferson General Hospital, where she was diagnosed with lower back pain. Jennifer continued treatment for |aher back injury with orthopedist, Paul ^Doty, M.D., until she was discharged on *1218 September 9, 2001. At trial, Jennifer produced documentation of medical expenses for treatment of injuries received in this accident totaling $3,242.97.
Although Peter did not seek medical treatment that night, he began experiencing pain in his neck soon after the accident, which caused him to miss several days of work. He sought treatment for his neck pain from orthopedist, Paul Doty, M.D., on March 16, 2002. Peter continued treatment with Dr. Doty until June 19, 2000, when he was discharged at maximum medical improvement for his neck.
Further, about one week after the accident, Peter began to experience migraine headaches, which gradually increased in severity and frequency. He was evaluated by Albert St. Pierre, Jr., D.D.S. for temporal mandibular joint dysfunction, which Dr. St. Pierre found was exacerbated by the automobile accident.
Finally, on July 27, 2000, Peter sought treatment from neurologist, Jeannette Lopez, M.D., for his migraine headaches, which he was experiencing five days a week. With medication and therapy, his headaches decreased in frequency and intensity. After February 22, 2001, he discontinued treatment because he did not carry health insurance and he was unable to afford the cost of treatment on his own. At trial, Peter produced documentation of medical expenses for treatment of injuries received in this accident totaling $3,196.13.
On April 13, 2000, Peter and Jennifer filed suit for damages against Patricia Harrelson, and her insurer, U.S. Agencies, Bruce Melancon and his insurer, an unknown insurance company, and Peter’s uninsured/underinsured motorist insurance carrier, GEICO Insurance Company. On April 4, 2001, GEICO was dismissed from the suit. On July 20, 2001, Patricia Har-relson and Bruce Melancon were dismissed.
|4On September 18, 2001, the matter proceeded to trial against U.S. Agencies, Harrelson’s insurer. After hearing the testimony and evidence presented, the trial judge found for Peter Delaune and Jennifer Thompson and awarded each of them $10,000 in damages. On September 25, 2001, the trial judge signed a judgment to that effect. U.S. Agencies filed a timely suspensive appeal.
On appeal, U.S. Agencies contends that the trial court committed manifest error in its judgment “since no evidence was adduced at trial proving the identity of the person operating the vehicle which rear ended[sic] Plaintiffs and caused them damages.” Specifically, U.S. Agencies claims that Patricia Harrelson was never identified as the person insured by U.S. Agencies nor was she identified as the driver of the vehicle. Further, the “late model Cá-maro” was not identified as a vehicle insured by U.S. Agencies.
In Stobart v. State of Louisiana, through Department of Transportation and Development, 617 So.2d 880 (La.1993), the Louisiana Supreme Court set out the appellate standard of review in examining the findings of a district court, as follows:
A court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong.” Rosell v. ESCO, 549 So.2d 840 (La.1989). This court has announced a two-part test for the reversal of a factfinder’s determinations:
1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).
*1219 See Mart v. Hill, 505 So.2d 1120, 1127 (La.1987).
This test dictates that a reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court’s finding. Id. The reviewing court must review the record in its entirety to determine whether the trial court’s finding was clearly wrong or manifestly erroneous.
| Nevertheless, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. See generally, Cosse v. Allen-Bradley Co., 601 So.2d 1349, 1351 (La.1992); Housley v. Cerise, 579 So.2d 973 (La.1991); Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell v. ESCO, [supra]; Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). However, where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness’s story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Rosell, 549 So.2d at 844-45. Nonetheless, this Court has emphasized that “the reviewing court must always keep in mind that ‘if the trial court or jury’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.’ ” Housley v. Cerise, [supra] (quoting Sistler v. Liberty Mutual Ins. Co., [supra at 1112])).
This court has recognized that “the reason for this well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.” Canter v. Koehring Co., 283 So.2d 716 (La.1973). Thus, where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Id.
Stobart, 617 So.2d at 882-883.
At trial, Peter Delaune, who was riding in the passenger seat, testified that, immediately after the accident, he turned around and saw that his car had been rear-ended by a dark-colored, late model Chevrolet Camaro. When he turned around, the interior dome fight in the Camaro was illuminated and Peter saw a woman in the driver’s seat and a man in the passenger’s seat. According to Peter, the two were “beating the hell out of each other ... with their fists, teeth, kicking, gouging, biting.” Then, the driver, a woman with long, blonde hair, exited the driver’s side of the vehicle and the passenger, a man with “close cropped” brown lfihair, exited the passenger’s side of the vehicle. The two “proceeded to fight in the street and in the front yard.” The man and woman were also exchanging profanities.
During their argument, the woman, later identified as Patricia Harrelson, stated that the Camaro was her vehicle. She also indicated that the passenger, later identified as Bruce Melancon, should find another ride home.
When Harrelson and Melancon heard Jennifer Thompson crying in the other *1220 vehicle, they approached it. Patricia indicated to Jennifer and Peter that she and Bruce had been fighting in the car and she accidentally stepped on the gas, instead of the brake, causing her vehicle to rear-end their vehicle. Immediately after Patricia Harrelson spoke to Jennifer and Peter, another car pulled up beside Peter’s car, the occupants offered Patricia a ride, and she left the accident scene.
At trial, Jennifer Thompson testified that, immediately after the initial impact, she looked in the rearview mirror and saw a woman in the driver’s seat and a man in the passenger’s seat. Because the dome light inside of their car was illuminated, Jennifer could see that the man reached over and removed keys from the car’s ignition and “that’s when they started fist fighting over the keys.” She also remembered the woman apologizing for the accident and saying that she had accidentally pushed the gas instead of the brake because they were fighting. She also recalled the woman leaving the scene in another car. Finally, she stated that she later learned the names of the woman and the man from the police officer who investigated the accident.
Finally, Jennifer Thompson’s ten-year-old son, Sean Burnes, who was riding in the backseat of Delaune’s vehicle that night, testified that he looked out the back window right after he felt a hard bump and saw a “girl and a boy fighting in a car.” He remembered that the “girl” was in the driver’s seat and the “boy” was in the passenger’s seat. He also saw the “boy” get out of the passenger side of the car 17and the “girl” get out of the driver’s side of their car. Thus, three witnesses testified that Patricia Harrelson was driving the vehicle that rear-ended them.
The testimony of Peter Delaune, Jennifer Thompson, and Sean Burnes constitutes a “reasonable factual basis for the finding of the trial court” that Patricia Harrelson was the operator of her vehicle that night. Further, there was no dispute regarding her ownership of the Camaro. Finally, the record contains a copy of an application for insurance, declarations page and exclusions introduced at trial that reveals that Patricia Harrelson and her 1989 Chevrolet Camaro were insured by U.S. Agencies on the date of the accident. Thus, we find U.S. Agencies argument is without merit.
In the present case, we conclude, after our review of the record, that the trial judge was presented with two permissible views concerning whether Patricia Harrel-son was the driver of her vehicle when it rear-ended Peter Delaune’s vehicle as well as whether she and her vehicle were insured by U.S. Agencies. The trial court chose the permissible view that Patricia Harrelson was the driver of her vehicle and that she and her vehicle were insured by U.S. Agencies. Thus, the trial court’s findings were not manifestly erroneous. For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to U.S. Agencies.

AFFIRMED.